(No. 7015—

J. T. BLANKENSHIP and ASSOCIATES, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 22, 1975.*

HOULT, HOUSE, DEMOSS & JOHNSON, by JERRY B. SMITH, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; HOWARD W. FELDMAN, Assistant Attorney General, for Respondent.

PERLIN, C. J.

This is an action to recover the sum of $14,250.00 for engineering services performed by Claimant in con-

nection with several construction contracts at the Giant City State Park.

The facts are not in dispute. On August 8, 1968, Claimant entered into an engineering services agreement with the Department of Conservation of the State of Illinois. Under the terms of that contract, Claimant was to provide engineering services required for the construction of water mains, pumping stations and an elevated storage facility serving the Giant City State Park. The pertinent provisions of the contract are as follows:

Compensation of Associate Engineer:

It is agreed that our commission shall be based either upon 5% of an estimated cost of $255,278.00, which is $12,762.00, or 5 % of the actual cost of construction, whichever is lesser. It is agreed that the Supervising Architect be given a revised final estimate upon completion of drawings and specifications and prior to advertising for bids. If this estimate is greater than the original estimate, the associate fee will be adjusted as approved by the Supervising Architect and paid on the basis of the foregoing percentage applied to this approved revised estimate, or to the actual cost of construction, whichever is the lesser.

Special Duties of Associate Engineers:

In addition to the services above to be compensated for as a percentage of the construction cost, we as associate agree to provide such additional services, as may be needed or required and/or requested by the Supervising Architect on a cost reimbursable basis (reimbursable expense over base fee). ... These services shall include as necessary for design, detailed surveys, subsurface explorations and soil investigations, aerial photography, full-time resident supervision, and construction layout work ... In the event that full-time resident supervision and/or construction layout work shall be required, this work shall be handled under a separate contract.

Payment for Special Duties:

The total fees for Special Duties outlined above shall not exceed $7650.00, provided that if it appears, after the services have begun, the cost of needed special duties will be greater than the sum specified, we will not proceed with services costing more than this sum without approval of the Supervising Architect.

Subsequent to the execution of this agreement, the Department of Conservation acquired a tract of property adjoining the park, on which Claimant was asked to provide additional water lines. Various other changes were ordered in the scope and nature of the work,

including the addition of an observation deck under the elevated storage facility. In addition, Claimant was requested by the Department of Conservation to provide full-time resident supervision services under the "Special Duties" provision of the contract.

At a pre-construction conference held on August 7, 1970, it was orally agreed between Claimant and representatives of Respondent that Claimant would receive additional compensation for these additional services either through change orders or additional contracts. However, Respondent never prepared additional contracts as promised, and no change orders of sufficient magnitude to cover the additional costs were ever processed.

Due to the foregoing changes the total construction cost of the project was $343,220.00, and Claimant's fee for engineering services was $31,338.06.

Claimant has been paid the sum of $17,087.26, and claims a balance due of $14,250.80. Of this sum, $7,356.10 is a charge for resident engineering supervision services. Bills for the balance were presented to the Respondent on June 13, 1972, and again on October 17, 1972, but were not paid.

Funds for this project were appropriated to the Department of Conservation in a lump sum, and all have been expended except the sum of $4,850.00, which lapsed on September 1, 1972.

John Blankenship, the Senior Partner in the firm of J. T. Blankenship and Associates, testified that following the pre-construction conference on August 7, 1970, he made several requests of Russell Brotherson of the Supervising Architect's Office for a separate contract to cover his duties and compensation under the Special Duties section of the original contract, but that no new contract was ever submitted to his firm.

Roy Geiselman, an employee of the Department of Conservation of the State of Illinois, testified that it had always been the intent of the Department of Conservation and the Office of the Supervising Architect that Claimant be paid for the services provided. Geiselman further stated that the work performed by Claimant was satisfactory, and that the charges therefor were proper and reasonable in all respects.

Geiselman said that it was not the fault of the Claimant that a change order was never processed. He said that the Office of the Supervising Architect "possibly could have been delinquent in processing the change order." Russell Brotherson agreed that delay in the Office of the Supervising Architect resulted in change orders not being processed. Brotherson further indicated that had change orders been processed in a timely manner, monies to pay for the change orders could have been released from the general fund for the project, through "shifting around" of the funds.

It thus appears that Claimant performed substantial services for Respondent not contemplated in the original contract between the parties, for which Claimant has not been paid because the Office of the Supervising Architect neglected to promptly process change orders, and to supply Claimant with an additional contract as called for in the original contract. All but the sum of $4,850 of the original appropriation for the project has been expended, and the balance of the appropriation has since lapsed.

The issues thus raised is whether, where an appropriation for a project has lapsed and funds in excess of the amount of the lapsed appropriation are owed for services properly performed on the project, an award may be made against the State in excess of the lapsed appropriation.

Respondent does not contest an award to Claimant of $4,850.00, the lapsed unexpended portion of the appropriation, but argues that the State is without authority to pay the balance of the claim as the full appropriation has been expended. Respondent contends that the evidence shows that had appropriate change orders or an additional contract been properly processed by the Office of the Supervising Architect, the full fee claimed could have been paid before the funds were expended for other purposes.

The Illinois Constitution of 1970, as did its predecessors, vests the power to authorize the expenditure of State funds exclusively in the General Assembly. Article 8, Section 2, provides:

The General Assembly by law shall make appropriations for all expenditures of public funds by the State . . . appropriations for a fiscal year shall not exceed funds estimated by the General Assembly to be available during that year.

Further, *Ill.Rev.Stat., Ch. 127, §166, states:*

No officer, institution, department, board or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law.

These constitutional and statutory provisions are designed to protect the State Treasury from unreviewable expenses. It is clear that the Court of Claims is without authority to make an award in violation of the foregoing constitutional and statutory provisions. In *Fergus v. Russell, 277 Ill. 20, 25,* the Supreme Court said:

The Court of Claims is a statutory body not provided for in the Constitution, and its action can have no effect upon the power of the legislature to pay claims against the State. If the legislature has no such power in any case, favorable action by the Court of Claims would not give the legislature power to pay such claim by making appropriations therefor. If it has the power to pay claims, it cannot be deprived of it by unfavorable action on such claims by the Court of Claims. The power or lack of power to appropriate money to pay claims depends upon the Constitution and not upon the action of the Court of Claims.

We have thus consistently denied claims for monies due from the State which are in excess of funds appropriated for the project. *Schutte and Koerting Co., et al., v. State, Ill.Ct.Cl. 591, 621-2,* and cases cited therein. The only exception whereby a contract exceeding an appropriation may be valid is where it is expressly authorized by law, as where authorities in charge of a penitentiary are required by law to feed, clothe and guard prisoners. *Fergus v. Brady, 115 N.E. 393, 396.* This is clearly not the situation before the Court.

Claimant has referred the Court to numerous cases wherein we have made awards where appropriations have lapsed, but in no case cited did the claim exceed the unexpended portion of the appropriation.

Were the Court to enter an award in the full amount of Claimant's claim, it would be usurping the exclusive power of the Legislature to determine the limits on the amounts of public funds which can be expended.

The Court is without power to make an award in excess of $4,850.00, the unexpended, lapsed portion of the appropriation. As we have heretofore stated, only an act of the legislature could grant Claimant's claim in its entirety.

Claimant is hereby awarded the sum of Four Thousand Eight Hundred Fifty Dollars ($4,850.00).