(No. 78-CC-0267—)

EVANS ASSOCIATES, a partnership, Claimant, *v.* ILLINOIS BUILDING AUTHORITY, a body corporate and politic of the State of Illinois, and CAPITAL DEVELOPMENT BOARD, an agency of the State of Illinois, Respondents.

*Opinion filed October 23, 1981.*

LIVINGSTON, BARGER, BRANDT, SLATER & SCHROEDER (WILLIAM R. BRANDT, of counsel), for Claimant.

TYRONE C. FAHNER, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondents.

ROE, C.J.

The facts in this case are largely undisputed. The Board of Governors entered into two architectural service contracts with Claimants to provide services in connection with construction of the Governors State University.

The two contracts were identical when assigned to the Respondents. The Illinois Building Authority was responsible for building construction and their contract was changed at the time of the assignment by mutual agreement wherein subparagraph 1.3.11 was deleted.

The Board of Governors assigned the oldest contract to the Capital Development Board, which was responsible for the fixtures in the building.

The three agencies shared in the payment of the architectural fees on a *pro rata* basis based upon what their share of the contract was with respect to the cost of the project. The Illinois Building Authority's share was

83% and the Capital Development Board was responsible for 9%.

The decision of the Court with respect to the Illinois Building Authority and the Claimant will be binding on the Capital Development Board and the Claimant.

The Claimant contends it was to provide basic architectural services through July 11, 1973, and that when the contract extended beyond that point the "basic" services became "additional" services for which they were entitled to additional payment expressly under the contract. Due to the fault of the contractor the project did not move according to schedule. A meeting was held in August 1973 with representatives of all the parties present. New schedules and procedures for completion were discussed but the Respondent did not specifically promise or agree to the payment of additional fees to the Claimant because of the extension of time beyond the completion date. It is the contention that the building was only 70% completed on July 11, 1973, and it can only be assumed that Claimants and suppliers had only received 79% of their fees at that time. It was to the best interest of all of the suppliers of goods and services to proceed with the project.

The contract responsibilities of the Claimant did not change after the meeting of the parties. (Record 58.) The Claimant continued to service the contract.

The Claimant contends that "time" determines what is a "basic" or "additional" service rather than the "nature" of the service. The Court does not agree with this contention. An examination of the contract specifically says the "time set forth as guidelines and not essential conditions of the contract."

Based upon this provision there is no specific com-

pletion date. If the July 11, 1973, date was arrived by adding the total number of months in the completion schedule, which is 43, to the contract date to arrive at July 11, 1973, as a completion date, it is not a valid method.

The schedule determines what are basic services and they start with design and proceed through administration of the construction contract.

The subparagraph with respect to "additional services" provides for additional fees made necessary by the default of the contractor or performance of the construction contract and for providing contract administration if construction time exceeds contract time by 20% through no fault of architecture. The provision as to construction time exceeding contract time was deleted in the Illinois Board Authority contract. The deletion was agreed to by the Claimant. The situation could have been specifically covered by a provision in the contract. However, a Claimant witness testified that it was unheard of for construction to exceed the contract by 20%, so apparently the Claimant was willing to assume this risk to secure the contract.

The Court is of the opinion that the contractor in fact defaulted in the performance of the contract, but there is no breakdown or proof as to how this delay added to the cost of providing basic services by the Claimant or that the default added to the architectural costs.

The contractural relationship of the parties can be determined by the written contract so there is no necessity to imply a contract. The Claimant's claim is therefore denied.