(No. 84-CC-0474-)

Loewenberg/Fitch Partnership, Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed June 11, 1986.*

Mohan, Alewelt & Prillaman (Paul Adami, of counsel), for Claimant.

Neil F. Hartigan, Attorney General (G. Michael Taylor, Assistant Attorney General, of counsel), for Respondent.

Montana, C.J.

The Claimant filed its complaint against the State of Illinois on August 24, 1983. The original complaint sought $116,826.05 in damages based on a contract claim. The Claimant filed an amended complaint on March 28, 1984, seeking $127,417.25 in damages on its contract claim. Trial was held in this cause, the parties have fully briefed the issues, and Commissioner Robert Frederick has filed his report.

The claim is for additional work for certain architectural services for the construction of the Illinois Department of Agriculture office and laboratory building located on the Illinois State fairgrounds in Springfield, Illinois. The contracts which are in evidence were entered into on May 3, 1976, for the original contract, and August 8, 1978, for the revised contract. Certain modifications of the contract are also in evidence.

The State of Illinois did not file an answer but has apparently relied on Rule 10 of the Rules of the Court of Claims to enter a general denial to the complaint.

The claims of the Claimant are listed in its bill of particulars and will be addressed hereinafter in this report by their L/F number. The claims are for AGFX-1 through AGFX-32. AGFX numbers 17, 19 and 22, totaling $2,696.40, are not at issue in this case pursuant to paragraph 6 of the amended complaint, wherein it was alleged the Respondent had paid or had agreed to pay these three small claims.

## The Facts

The Claimant was the architect/engineer for the construction of the Illinois Department of Agriculture office and laboratory building. Ralph Hahn & Associates were its engineers for the project. The Capital Development Board hired its own separate construction manager. The project was supposed to take 22 months to complete but ended up taking close to five years. The Claimant is seeking only additional on-site time which it feels is mandated by the contract. It is not claiming any additional monies for contract administration. It is also claiming payment for extra work which was requested by the Capital Development Board. These items were billed to the Capital Development Board with documentation. Claimant was advised that there was no money to pay these claims. It could not document any deductions from contractors to generate any more monies and had to file a claim with the Court of Claims.

Frank Bernstein, the supervisor of construction management with the Capital Development Board (CDB hereinafter), was called as an adverse witness by Claimant. He had been in charge of the project for the agriculture building, and he is a registered architect. The project was the construction of a building of structural steel and masonry to house offices and laboratories with

150,000 square feet. The projects also included installation of high-tech solar heating and cooling.

The building was to be built at one site but had to be relocated due to subsurface mining problems. The building was built on the southwest portion of the Illinois State fairgrounds. The Claimant was the A/E, and Ralph Hahn & Associates were the consulting engineers on the project. The general contractor was C. Iber & Sons. Claimant's exhibit No. 3 is the base contract between Claimant and Respondent. It included $76,858.00 for on-site observation. A modification of Number 4 was made which added $81,000.40, $10,129.50 of which was for an observer. The original contract had a full-time observer for $56,056.00. A second part-time observer was budgeted at $20,258.00. These positions were for 22 months. Mod 4 added a second observer for one day per week. With all modifications there was budgeted a total of a first observer for 32 months, five days a week, and a second observer three days a week for 22 months. A total of $112,716.15 was budgeted for on-site observation to March 31, 1983. The total amount budgeted was spent.

Section 3-3.2 of the contract allows for additional compensation beyond the contract completion date. The A/E absorbs the first 60 days beyond the completion time and the CDB is obligated to pay additional amounts if the delay is not the fault of the architect or engineer.

This project was started in August of 1978, was scheduled to be completed 22 months later in June of 1980, but was finally completed in June of 1983. The Claimant and Ralph Hahn & Associates presented exhibits Nos. 9, 10 and 11 to request additional

compensation. These exhibits included the request and background information.

The A/E and CDB set the anticipated construction time. The completion time on this project was extended when the solar application was put into the contract. The A/E had input into this extension.

The contract was between the State of Illinois and Loewenberg & Loewenberg. The State had no contract with Ralph Hahn & Associates. Ralph Hahn & Associates were hired by Loewenberg & Loewenberg, the Claimant herein. C. Iber & Sons, the general contractor, did a very poor job of contractor coordination. The first observer was to be there every day. The second observer was there as necessary for specific problems. Mr. Bernstein was later recalled as an adverse witness and testified in summary as follows:

An engineer bills the architect and the architect bills the CDB in the normal course of events. The claims in this case were made by Loewenberg to the CDB on June 28, 1983. The CDB requested additional documentation and supplementary information was given to CDB. On the claims for which Loewenberg was making a request for payment, the work actually was done by its subcontractor, the consulting engineer, Ralph Hahn & Associates. AGFX 17, 19 and 22 were paid by CDB to Loewenberg through deductions from contractors. There was money available to pay the other claims. (RP 242.) This would have been through a methodology of proving a claim to deduct money from contractors causing the delays. (RP 243.) This is through the "standard documents for construction" which is referred to in the contract. However, in paragraph 3.8, the contract states that payments withheld from contractors shall not affect the A/E's right of payment. Other than

monies from deductions from contractors there was no money available in the budget to pay the claims of Loewenberg. (RP 245.) The architect is charged with the duty to administer the standard documents of construction. The CDB may withhold payments in whole or in part if it reasonably determines that the contractor's work is not in accordance to the contract or plans. (RP 248.) These claims were paid to the A/E (17, 19, 22) because the A/E documented to CDB that the specific contractor was at fault by clear evidence.

Mr. Bernstein testified that all those claims still existing in AGFX 1-23 were not paid because it was part of the responsibility of the A/E to administer these types of items under the basic contract. The A/E did not substantiate the claims. They submitted man hours without specific allocations as to time of incident and what it was for.

The CDB did not make further deductions from contractors because the documentation was not qualitative enough. (RP 261.)

Ralph Hahn testified in summation as follows:

He is president of Ralph Hahn & Associates and they are consulting engineers. They were the mechanical, electrical and civil engineers for this project. They were hired by Loewenberg & Loewenberg. They billed Loewenberg & Loewenberg for the work they did. They were paid out of Loewenberg's fee. He was not sure how on-site observation was paid. Mr. Hahn identified Claimant's exhibits Nos. 9, 10 and 11, which he stated were "the request for compensation by Loewenberg which has their own particular request for itemized compensation and which really was also a transmittal of *our* request for compensation." They

documented their requests to Loewenberg and to the CDB as to the extra work. The extra work was for items during the construction period. There are no claims for the design period. The extra work was either requested by CDB or the Department of Agriculture. None of the claims for extra work was for contract administration.

Mr. Hahn testified as to each of the items of claimed extra work in summary as follows:

AGFX-1. The deduct meter. This measured the water to lower sewage costs. This was not included in on-site observation and is not in his estimation a part of contract administration normally performed by an A/E. This was not in the original plan. He claims $495.79 for this work, which is based upon the hours worked for personnel plus 150%. This is basic payroll plus benefits plus the extra percentage. Loewenberg added 25% to each item of extra work, but that 25% has been eliminated from the claims.

On cross-examination, Mr. Hahn testified that they had to redesign the piping and prepare drawings. A change order was required and it was a minor change. Section 4.2.6.3 has the A/E absorb minor modifications and this deduct meter, standing alone, is a minor modification.

Frank Bernstein, the State architect and witness, testified that as to AGFX-1, the CDB refused to pay this claim as it is a part of the basic services and within the normal purview of the A/E contract in paragraph 4.2.6.3. That provision states the A/E shall prepare minor modifications and applications for change orders. This claim was made in 1983 after the project was completed.

AGFX-2. Mr. Hahn testified his people felt that

Dynamic Heating & Piping were not doing the welding properly. They were not using heavy enough machines or rods for the job. CDB requested they locate a testing lab to X-ray the welds. He is seeking reimbursement for research to find the proper lab, to negotiate the work, and to observe this work. The problem was that the contractor did not do the work according to specifications. The amount claimed by Ralph Hahn for this extra work is $519.45. On cross-examination Mr. Hahn testified that it is the duty of the A/E to protect the CDB against defects in construction. Part of the basic duties of the observer is to find defects. However, he felt the X-ray sort of thing was a little bit above and beyond what is normally expected. In and of itself, it was part of the A/E's normal activities.

Frank Bernstein testified that CDB refused this claim because it was part of the normal responsibilities of the A/E in assuring the State that installed items were according to plans and specifications. This claim was made in 1983 after the project was completed.

AGFX-3. Review of Dynamic change order. Dynamic was a subcontractor doing heating and piping work. Mr. Hahn testified the change order was 516 pages long and was prepared for legal purposes. This was not a normal change order. They ordinarily review change orders as part of basic contract administration, but this one was entirely different in that it was 516 pages long. In 24 years he had never reviewed a document of this volume or detail. He felt it was not included in the contract. The claim was based on a problem with C. Iber & Sons and not the A/E. They were not at fault. Hahn seeks $4,239.45 for this extra work as it took 90 hours of time.

On cross-examination he testified that normally

reviewing change orders is part of the A/E's normal function. The problem was the size of this one. Exhibit No. 3, the contract in paragraph 4.2.6.5 requires the A/E to make recommendations on claims. This was a claim by Dynamic.

Frank Bernstein testified this claim was denied as the A/E under the contract is responsible for reviewing any documentation with regard to claims and disputes. The contract does not say how many pages or how voluminous the claim or dispute may be.

AGFX-4. Revise mechanical systems to accommodate natural gas. Mr. Hahn testified that when the building was originally designed, natural gas was unavailable. Later natural gas restrictions were removed and they were directed to revise the design per change order so a combination of gas and oil could be used. They also reviewed contractors' proposals and shop drawings, observed the contractors' work, and engaged in conferences. This was not part of the original design. This was a redesign costing $29,345.00, so it was a significant change order. Hahn claims 44½ hours extra work for a total of $1,392.79.

On cross-examination Mr. Hahn testified that this was a 1% change in design.

Frank Bernstein testified CDB refused this claim pursuant to paragraph 4.2.6.3 of the contract as it was the preparation of a minor change order.

AGFX-5. Revision to fixed partitions. Mr. Hahn testified that the user agency, the Department of Agriculture, wanted a revision in the plans to convert a space into a conference room and storage rooms in a different configuration. They prepared the documents for the changes required for this design change. This

would normally be extra work. They worked 99¼ hours on this and claim $2,829.86.

On cross-examination he stated the $2,829.86 is only for the engineers' redesigned portion. There is nothing in there for the architect.

Frank Bernstein testified that this claim was also refused as a minor change order under section 4.2.6.3 of the contract.

AGFX-6. Cooling tower pumping. Dynamic Plumbing submitted drawings for approval for cooling towers and water piping that were different from what was shown on the specifications. Dynamic assured Hahn that the system would work and if it did not, they would make it work. Hahn approved the new system but it did not work. Then Dynamic was off the job so Hahn was asked to solve the problem, which they did. A separate contractor did the work. He feels Dynamic was at fault. He claims $6,210.50 for this extra work which consisted of 156½ hours. He claims this extra work to be from a contractor error and not part of contract administration.

On cross-examination he testified that the A/E made the judgment that the new plan by Dynamic would work. He denied however, that it was A/E error. He claims it was the contractor's fault. The system was put in by Dynamic before the A/E received the changed plans, but the A/E accepted it on the assurances from the contractor that it would work. He also admitted that in general it was the job of the A/E to see that things like this did not happen.

Frank Bernstein testified this claim was refused by the CDB pursuant to paragraphs 4.2.6.4 and 4.2.6.5 of the contract. This was a review of shop drawings as well as a review with regard to claims and disputes. It was

also covered under the architect's responsibility under periodic observations on the site for assuring the system was installed correctly.

AGFX-7. Hot water in chilled water piping. During construction a problem developed in chilled water headers in the mechanical room and they spent time trying to find a solution to the problem. He feels this was contractor start-up work which should have been done by the contractor. He does not know if CDB requested Hahn or Loewenberg to do this work, but it had to be done. He claims 44 hours on this work for $2,303.00.

On cross-examination Mr. Hahn testified that this was fine tuning of the system. Under paragraph 4.2.6.8, the A/E has an obligation to provide qualified personnel to observe the function and testing of the electrical and mechanical work.

Frank Bernstein testified that this claim was refused because the work was within the normal purview of the A/E's responsibilities. The A/E was to guard against defects and observe and test the work pursuant to paragraphs 4.2.6.7 and 4.2.6.8 of the contract.

AGFX-9. Design handicap ramps. Mr. Hahn testified that CDB adopted new regulations for handicap access. They had to go back and design ramps for the handicapped per change order. This involved 9¾ hours and he claims $504.86.

On cross-examination he testified that all they were claiming was for time spent by his employee in designing the ramp.

Frank Bernstein testified this claim was turned down because he had laid out the design and the A/E was only requested to provide the backup information

to process a change order. He had received sketches only after the work was completed. They provided backup information to process a formal change order.

AGFX-10. Germination and cold storage rooms. Mr. Hahn testified that two years after construction should have been completed, the user agency made some changes which required divisions and additions to construction documents for electrical and plumbing services which they did. There were also low voltage problems due to problems in the initial design. He is requesting $1,353.99 for this additional work which is based on 29¾ hours.

On cross-examination he testified that two years after the building was to be completed, the user wanted to add prefab rooms. They required a change order. In and of itself it was a minor modification.

Frank Bernstein testified that this was not a valid claim because it was a minor change under the change order provisions of the contract. It was part of the basic obligations of the A/E.

AGFX-11. Extra contractor coordination effort throughout duration of work. Mr. Hahn testified that the general contractor did not adequately fulfill his coordination responsibilities. This was the principal reason that the project took an extra three years to build. Hahn was directed by CDB and Loewenberg to assume much of the coordinating effort. Claimant's exhibit No. 10, entitled "Contractor Coordination," indicates a meeting which all interested parties attended. Mr. Hahn feels this meeting led to his understanding he was to assist in the coordination effort. Under the original contract, the A/E was not responsible for contract coordination pursuant to paragraph 4.2.6.11 of exhibit

No. 3 of the contract. Exhibits Nos. 10, 11 and 12 document the extra time to substantiate this claim.

The lack of leadership by the general contractor caused Hahn extra work; particularly mechanical and electrical work. Most of this was coordinating work with various contractors. Exhibit No. 10 documents the many problems Hahn had, which includes filed reports. The project was delayed for several reasons. One of these was the lack of coordination where people could not work. The total hours for extra contractor coordination come to 424½ hours for a total claim of $13,730.22. All of these hours are for work in the initial 22-month period.

Frank Bernstein testified that the contractors of record were not cooperating or coordinating work with one another. One cause was the poor coordinating job done by the general contractor. Also the work was of a unique nature and hard to explain to the contractors. Because the plans were so unique it was necessary for the A/E to show the contractors, through many meetings, what to do. This is part of the A/E's responsibility regardless of the level of technicality involved. (RP 385.) It was the A/E's basic job to see that the building was constructed according to the plans.

AGFX-12. Storm sewer rock design. Mr. Hahn testified this was for a few hours' work for revision of some documents for the storm sewer. This was for 8¾ hours and the claim was for $363.81.

On cross-examination Mr. Hahn waived this claim and no further consideration is given thereto.

AGFX-14. Chiller failure. Mr. Hahn testified the chillers ruptured. Persons unknown turned the chiller pumps on and left them running. Hahn investigated the matter to fix responsibility. It was to him an on-site

observation rather than extra work. His claim is for $703.02.

Frank Bernstein testified that this claim was refused by CDB as it was a minor change order and because the State wound up paying twice for a portion of the chiller which should not have been done. The A/E should have protected the State under the contract from the defect.

AGFX-15. West parking lot. The lot was not built properly so it would drain. Mr. Hahn had to go back and recalculate the elevation and observe the removal and replacement of the parking surface. He claims $600.49 for this.

On cross-examination Mr. Hahn admitted that in relation to this parking lot, the A/E is responsible and supposed to be sure of the intent of the plans. The parking lot was done wrong and they did work with the contractor to make it right.

Frank Bernstein testified this claim was refused because the A/E should have protected the State from this defect. The State was paying for two observers and the A/E should be able to give the State a product which is correct the first time.

AGFX-16. Perchloric hood exhaust ducts. The ducts were not as specified. He claims $885.54.

On cross-examination Mr. Hahn waived this claim.

AGFX-18. Dynamic back charge. Mr. Hahn testified that certain work had to be done by other contractors since Dynamic Heating & Plumbing Company was off the job. Hahn had to investigate which items should be back-charged to Dynamic. His claim totals $397.01.

On cross-examination Mr. Hahn admitted that by

itself this item was within the purview of his responsibilities under the contract in the claims and disputes section.

Frank Bernstein testified that this claim was refused because this work was part of the basic conditions of the contract for the A/E to perform under paragraph 4.2.6.7 of the contract. The A/E had two observers to catch these problems.

AGFX-20. Replacement of air separators. The air separators were incorrectly installed. They investigated and devised a method to make the system work. He claims $464.80.

On cross-examination Mr. Hahn waived this claim also.

AGFX-21. Premature punch lists. Hahn prepared punch lists so Dynamic could get off the job and be paid off. They had to prepare a punch list in November of 1980 and then again in November and May of 1982. He felt the punch list was not necessary in 1980 and was done for the convenience of the owner and therefore he is claiming an extra on-site item. Normally a punch list is part of regular on-site services but he feels this was out of scope. He claims $1,282.14 for this.

Frank Bernstein testified that this claim was refused because it is part of the A/E's basic job to prepare punch lists and there is no statement that there will be only one punch list and there is never only one.

AGFX-23. Handicap ramp construction. This is for the construction of the handicap ramp referred to in the design claim in AGFX-9. He claims $192.61.

On cross-examination Mr. Hahn waived the claim.

On-Site Observation Items. These are claims for work in the field rather than office work such as preparing plans.

AGFX-24. First observer, full-time, 15 months at $131.94 per day and second observer, 2 days per week, 15 months at $131.94 per day.

Mr. Hahn testified that he submitted these claims originally on an hourly basis with the date, the person's name, and the number of hours. Loewenberg submitted the claim as so many days per week for a certain length of time. At the hearing these items were voluntarily reduced to a total of $35,491.86 for the first observer and $15,728.87 for the second observer.

Frank Bernstein testified that CDB determined not to pay these claims because of the delays in the project. The only people who could resolve problems on the project were those who designed the project. Another problem was the lack of qualitative documentation for these requests for more money. The State needed to know who was there, what happened, why it happened, and who caused it to happen. The State does not dispute that the work was done and an additional observer could have been paid out of appropriated dollars if the backup information had come in in a timely and qualitative fashion so that the State could have gone after the contractors that caused the problems.

All of the funds for this project were expended and disbursed by June 15, 1983. The contractors were paid and the money used up because the State had not formally received documentation as to fault so that monies could be withheld from specific contractors. He had three meetings with Ralph Hahn requesting adequate documentation. It is an obligation under the

basic contract to provide the documentation. (RP 399.) It is the position of the CDB that Claimant's exhibits Nos. 9, 10 and 11 are not adequate documentation under the contract. AGFX-24 was denied because the documentation was not relative to a specific contractor problem or error. All of the observation items on AGFX-24 were denied for the same reason. The State was not the cause of additional time overruns and it was the A/E's job to document the fault to specific contractors which they did not do.

Mr. Hahn testified further that any delays by the A/E were minor and within the 60-day period covered by the contract. Strikes caused delay. Change orders, lack of a roof on time, and solar equipment were all causes of delay. However, the major delay was due to lack of coordination of the work.

Mr. Hahn testified on cross-examination that Loewenberg & Loewenberg contracted with the State of Illinois. Hahn contracted with Loewenberg to be a consultant. They contracted to be paid a lump sum by Loewenberg and they have been paid. As an offer of proof, Hahn testified that he had not been paid for these extra items which he has billed to Loewenberg for the money or filed a lien. He was a subcontractor on this project.

He further testified that the A/E approves or disapproves compliance with the intent of the plans and specifications. If there is a design error it is the fault of the architect or engineer and any delays would be their responsibility.

Mr. Hahn further testified they made these claims to the CDB but were advised that there was no money. (RP 217.) CDB advised the A/E to document whose fault

these problems were and they could delete that amount from the individual contractors involved and they would be paid from the budget for the contractors. (RP 217.) They were not able to document the claims to CDB's satisfaction and therefore not paid. (RP 217-218.) Exhibits Nos. 9, 10 and 11 were prepared as it was apparent CDB did not have money to pay the A/E.

All the work they did was as agent for Loewenberg & Loewenberg and all claims made are on behalf of Loewenberg & Loewenberg.

Robert Lambert testified for Claimant that he is a vice president of Loewenberg & Fitch. He is a registered architect. He was the project manager for Loewenberg on the agriculture building project. Everything Ralph Hahn & Associates did on the project was under the authorization and direction of Loewenberg. As to the claims, he stated, "If they are our subcontractors and they submitted it to us, they belong to us in a sort of a way." (RP 265.)

As to the first observer, they furnished on-site observation to CDB which came to about $150,000.00 and they have only been paid $82,392.00. They are only claiming the on-site observer to December of 1982 even though he worked longer. They are claiming for a first observer for the 20 months after May 1, 1981. The figure was computed at 20 days per month on AGFX-24. The daily rate was $131.94 per day. The total claim was $52,776.00 as to the first observer, but reduced at the hearing to $35,491.86.

Loewenberg also seeks payment for a second observer, which they furnished after the scheduled completion date for 22 months. They also claim a second observer for 15 months. The total they claim is

$15,728.27 for the second observer as reduced at the hearing.

As to AGFX-25, Loewenberg claims $10,423.26 for an observer to attend project meetings. Exhibit No. 9 itemizes the time of an additional man to attend these extra meetings to expedite the project. Under the contract in paragraph 4.2.6.7, Loewenberg was required to visit the site periodically. Loewenberg claims it was extra work to attend meetings after the scheduled completion date. They claim $10,423.26 for 79 days at $131.94 per day. They billed this at the same rate as on-site observation. They agreed to this rate even though it was low for the work. These were coordination meetings and CDB requested the extra man.

AGFX-28-32. Preparation of change orders. Number 26 was a user change; No. 27 was a review of documents; No. 28 was to prepare a sketch for trees and a minor change; No. 29 was a change order to demolish a gate house; No. 30 was to prepare a change order for new furniture; No. 31 was a change order to add soil mixture to a plant area; and No. 32 was to review change orders of contractors to get money back from some other contractors. They claim a total of $2,512.55. There were no monies available to pay these claims from CDB. (RP 293.)

On cross-examination, as an offer of proof, he testified that if these claims were denied by this Court, Loewenberg would not pay Hahn. (RP 296.)

Hahn billed Loewenberg by the hour of this work claimed as on-site observation, but Loewenberg submitted the claims to CDB differently as total hours. Loewenberg billed per day while Hahn billed per hour.

Under the basic contract Loewenberg was to have a

man attend a periodic monthly inspection. Also under the contract, the A/E was the representative of the CDB.

On cross-examination he could not say what AGFX-26 was for. It was for a minor few hours on each one of these claims. Normally it would come under the obligations of the A/E in the basic contract. The architect designs to 90% of the project cost. The 10% is for contingencies such as changes and revisions. (RP 332-333.)

AGFX-27 was three hours of minor changes. AGFX-28 dealt with minor changes and AGFX-29 was a change order. AGFX-30 also was a minor change as were AGFX-31 and AGFX-32. These were actually part of the basic contract.

The documentation in exhibit No. 9 was not prepared or presented to CDB prior to June 28, 1983, but the substance thereof had been verbally given to CDB prior to that date. All exhibits of Claimant were admitted into evidence except exhibit No. 15 which is a part of the record.

As to AGFX-25, Frank Bernstein testified for the State that this claim was denied because this work was part of the basic contract agreement. (RP 401-402.) The A/E is required at a minimum to attend one meeting per month. Because of the complexity of the project there were more meetings. One meeting is a minimum not a maximum. This was understood and the A/E should have known he would have to come from Chicago to the meetings in Springfield.

As to AGFX-26, this was denied because it was covered under the change order provisions of the contract. AGFX-27 was refused because it was a minor change and should have been overviewed by the A/E

during the construction process. AGFX-28, 29, 30, 31 and 32 were viewed as minor changes under the contract and refused. The project was $12 million and these changes were $2,000.00 and therefore minor in nature. The architect was paid an amount approaching $1 million on this project, so $2,000.00 is minor.

In addition, there is slack built into the contract, as a 10% contingency is built in. The A/E gets the money up front on his fee before the A/E does the work. It is paid in the process as the work is done, but the fee is calculated on the basis of 100% of the construction cost, which includes 10% over the basic design. The 10% is for change orders, minor modifications, and so forth.

On cross-examination, Frank Bernstein testified that the A/E fee is a percentage and in this case 5.799% of the net available construction dollars. He agreed that paragraph 3.8 of the contract states, "Payments withheld from contractors shall not effect the A/E's right to payment."

He testified the A/E made an attempt to reasonably guard against defects. The A/E recommended further deductions from the contractor but CDB did not follow that recommendation. The CDB told the A/E that if they could document time expended for extraordinary professional time expenditures, a fund could be created to pay them. The A/E was to document contractor fault so deductions could be made and then document their extraordinary time if the A/E was to be compensated. The A/E was not able to substantiate the time it claimed it expended. (RP 441.) They gave CDB logs of time and dates with no substantiation as to what they did under the contract during that time. The CDB required the A/E to link up his team to a specific contractor default if the A/E was to be paid for that additional time the A/E

claimed it spent. Some of the A/E's claims would have been paid if they had provided the requested information to substantiate them. There was a contingency fund, but it was spent. (RP 455.)

Mr. Bernstein admitted that the A/E is entitled to some additional on-site observation time and it is just a question of how much. (RP 457.) He cannot tell how much because the documentation is insufficient. He could not rebut the claim for actual on-site observation time expended as to pure time expended. (RP 458.) The contractors, users, weather and strikes caused most of the delay in the project. Any delays caused by the A/E were minor.

The problem is that the A/E failed to produce and still fails to produce substantive documentation on where the extra time was expended due to extraordinary conditions. The time should have been documented in daily logs traditionally made in ordinary practice, carried out by every man in the field. (RP 471.)

Mr. Hahn testified in rebuttal that the standard documents for construction do not apply to the A/E and further that the A/E supplied sufficient documentation to the CDB to support the claims made for extra work. Mr. Bernstein had asked for more specific documentation such as, "I was on the job today, and here is exactly what I did today." (RP 481.) The A/E's documentation was different since the request for documentation came after the job was completed and they could not go back and reconstruct the exact extra work. However, it was the same type of documentation that the State accepted to pay some of the claims.

### The Law

Several of the claims of the Claimant are more

easily resolved by rejection thereof based on the contract between the parties.

We deny recovery for the following items for the reasons stated:

1. AGFX-1. This was a minor change within paragraph 4.2.6.3 of the contract and within the basic services of the A/E.

2. AGFX-2. This is part of the normal responsibilities of the A/E in assuring the State that the work is proceeding according to the plans.

3. AGFX-3. This is part of the basic contract paragraph 4.2.6.5 for the A/E to make recommendations on claims.

4. AGFX-4. This is a minor change order and part of the A/E's basic duties under paragraph 4.2.6.3 of the contract.

5. AGFX-5. This is also a minor change order under paragraph 4.2.6.3 of the contract.

6. AGFX-6. The A/E concurred in approving this change of plans. This is A/E error and attributable to the A/E. This claim is also denied pursuant to paragraphs 4.2.6.4 and 4.2.6.5.

7. AGFX-7. This claim is denied under paragraphs 4.2.6.7 and 4.2.6.8 of the contract. It is part of the A/E's normal responsibilities.

8. AGFX-9. This was a minor change order and is denied for that reason.

9. AGFX-10. This was a minor change order and is denied for that reason.

10. AGFX-12. Claim waived at trial.

11. AGFX-14. This was a minor change order and the A/E should have protected the State from this defect.

12. AGFX-15. The A/E should have protected the State from this defect.

13. AGFX-16. Claim waived at trial.

14. AGFX-18. This was part of the basic contract work under paragraph 4.2.6.7.

15. AGFX-20. Claim waived at trial.

16. AGFX-21. It is part of the A/E's basic duties to prepare punch lists.

17. AGFX-23. Claim waived at trial.

18. AGFX-25. This was part of the basic duties and there is no provision in the contract for extra pay for this.

19. AGFX-26. This was a minor change order and within the contract.

20. AGFX-27. This was a minor change order and within the contract.

21. AGFX-28. This was a minor change order and within the contract.

22. AGFX-29. This was a minor change order and within the contract.

23. AGFX-30. This was a minor change order and within the contract.

24. AGFX-31. This was a minor change order and within the contract.

25. AGFX-32. This was a minor change order and within the contract.

The Claimant has not proven by a preponderance of the evidence that these items of work are beyond the basic requirements of the A/E to perform. All of the above-stated items were part of the A/E's basic contractual obligations and therefore not extra work.

The only remaining claims are AGFX-11 and AGFX-24. On AGFX-11 Claimant seeks $13,730.22 for 424.5 hours of extra contractor coordination work. As previously stated, Mr. Hahn testified that the general contractor did not adequately fulfill his coordination responsibilities under the contract and that this was the principal reason for the delays. The lack of leadership was said to have caused him extra work which he was directed by Loewenberg and the CDB to perform. Frank Bernstein acknowledged that the contractors were not cooperating or coordinating work with one another and one of the causes of this situation was a poor coordinating job done by the general contractor. However, his position was that because the plans were so unique it was necessary for the A/E to spend extra time with the contractors, that this is part of the A/E's responsibility regardless of the level of complexity involved, and that it was the A/E's basic job to see that the building was constructed according to plans. After reviewing the record we are inclined to find in favor of the Claimant at least in part on this item.

There appears to have been a real problem with coordination, and the A/E was instructed to and did perform extra effort. How much of this time was part of his basic responsibility of seeing that the building was constructed according to the plans and how much was over and above that amount of time is not entirely free from doubt. We affix the Claimant's damages at $10,000.00 on this item.

On AGFX-24 the Claimant seeks for the first

observer $35,491.86. This is based on 269 billable days at $131.94 per day. For the second observer it claims $15,728.27.

The agreement of the parties clearly provides for extended on-site observation under section 3.3.2 and payment of these amounts is not affected by any payments withheld from contractors under section 3.8, except for the fact that this was the only money available to pay them. Also under section 9.3 of the agreement, the parties imply there may be some dispute on payment for this on-site work and the contract provides for the Court of Claims to decide the issue. The contract specifically allows for additional on-site observation. The A/E was to absorb only the first 60 days of delay. The first observer was paid for an additional 10 months but there was no money available to pay beyond that period and there was no money to pay the second observer. The delays were not the fault of the A/E. Mr. Bernstein testified the A/E is entitled to compensation for this. He just could not say how much. The State could not rebut that the first and second observers had expended the amount of time claimed. (*Evans Associates v. State* (1981), 35 Ill. Ct. Cl. 140.) The dispute in 1983 was to what the observers spent their time doing. The documentation plus the testimony in the trial proves the on-site observation was done. We find that the Claimant suffered damages for claim AGFX-24 in the sum of $51,220.13.

The question of entering an award remains. The Respondent did not plead affirmative matters. The Respondent's arguments that these claims are really those of Ralph Hahn, a subcontractor, were withdrawn in Respondent's brief on page 1 and are considered further. Respondent does argue that because all funds in

the appropriation were totally expended on June 15, 1983, there was no lapse of appropriated money from which an award to this Claimant can be made. (*Ude, Inc. v. State* (1982), 35 Ill. Ct. Cl. 384; *Brokaw Hospital v. State* (1982), 35 Ill. Ct. Cl. 231.) They argue that where insufficient money lapses from which a claim can be paid, no award may be made in excess of the amount of money lapsed. (*Blankenship v. State* (1975), 31 Ill. Ct. Cl. 116.) Respondent argues that lack of any funds to pay is not an affirmative defense. It in fact is a constitutional prohibition under article 8, section 2B of the Illinois Constitution of 1970. In any event, the record is clear that Claimant was advised many times that there was no money to pay the claim. Insufficient funds is not really an affirmative defense. It is a condition precedent to this Court's making an award. This Court could make a finding of liability but not enter an award. (*Van Nattan v. State* (1981), 34 Ill. Ct. Cl. 260.) This Claimant has cited *Schutte v. State*, 22 Ill. Ct. Cl. 591, and *Hall v. State* (1979), 35 Ill. Ct. Cl. 1. Claimant argues that the State has failed to show that transfers from line items could not have been made to pay this claim, or other unobligated funds were not available, but we can take judicial notice that transferability is not possible here. The evidence before the Court is that the funds were totally expended and there is no evidence before the Court that any other funds lapsed which could have been used. The additional on-site observation has been proven by a preponderance of the evidence in the total sum of $51,220.13. However, to enter an award would in effect be a deficiency appropriation in violation of article 8, section 2B of the Illinois Constitution. The evidence before the Court is that all available funds for this project were totally expended. This case does not fall into the one exception whereby a contract exceeding an

appropriation may be valid where it is expressly mandated by law. (*Blankenship v. State, supra.*) See also section 30 of the State Finance Act, Ill. Rev. Stat., ch. 127, par. 166.

It is a fundamental principle of the Court of Claims that where agencies incur obligation in excess of amounts appropriated to them, that such claims must be denied. Only an act of the legislature can provide for Claimant's damages. For purposes of possible legislative action, we find Claimant's damages to be $61,220.13; however, we are constrained by law to, and hereby do, deny this claim.