(No. 88-CC-1180– )

LA SALLE NATIONAL BANK, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Order filed June 18, 1991.*

ROSENFELD, ROTENBERG, SCHWARTZMAN, HAFRON & SHAPIRO, for Claimant.

ROLAND W. BURRIS, Attorney General (ROBERT J. SKLAMBERG, Assistant Attorney General, of counsel), for Respondent.

## ORDER

PATCHETT, J.

This cause coming on to be heard on the motion of the parties for entry of an award and for dismissal of this matter, due notice having been given the parties hereto, and the Court being fully advised in the premises.

The Court finds that:

In relevant part, the motion at bar reads as follows:

"1. This matter is a claim arising out of a contract for the rental of real property and is brought pursuant to Section 8(b) of the Court of Claims Act. (Ill. Rev. Stat. 1989, ch. 37, par. 439.8(b).)

2. That on or about May 10, 1984, the Claimant and Respondent entered into a lease whereby the Respondent on behalf of the State of Illinois became the lessee of certain premises commonly referred to as 174 West Randolph Street, Chicago, Illinois. A copy of the lease has been filed in this matter.

3. The lease was to commence on August 1, 1984, and expire on July 31, 1989. The lease contained a provision that the various obligations, covenants and duties of the Lessee hereunder, including the payment of rent is conditioned upon and subject to passage of a suitable appropriation to the

Office of the Attorney General by the General Assembly of the State of Illinois and to the lawful availability to the Attorney General of sufficient funds for the payment of rent (par. 17.15).

4. That on July 23, 1987, respondent notified claimant that it would terminate the lease on August 31, 1987, citing paragraph 17.15 of the lease and Ill. Rev. Stat. 1986, ch. 137, par. 145.

5. Claimant contends that this termination constituted a breach of lease agreement and claims damages for unpaid rental and other costs in the amount of $405,256,000 plus appropriate interest.

6. Respondent had filed responses denying liability as plead but acknowledging that certain sums due under the lease for taxes were appropriate but were not paid because funds had lapsed.

7. That through discovery and a review of the relevant documents and law, the parties believe that it is in their best interests to attempt an equitable resolution of the claim. Accordingly, the parties have filed this joint motion.

### LAPSED FUNDING

8. The lease provided that respondent pay, as additional rent, a sum equal to the yearly tax bill minus $20,112.14.

9. Because the tax bills for property located in Cook County are not sent until the following calendar year, funds to pay said amounts for the prior fiscal year could not be payable and did lapse.

10. Therefore, the claimant and the respondent have determined that the following sums were due and payable under the lease as additional rent attributable tied to the real estate taxes.

| Year | Taxes | Adjustment | Due |
|------|-------|------------|-----|
| 1986 | 69,053.85 | −20,112.14 | 48,941.71 |
| 1987 (prorated) | 66,102.22 | −20,112.14 | 30,813.36 (prorated to 9/1/87) |
| | | TOTAL: | $79,755.00 (rounded) |

Said sums are due claimant pursuant to the terms of the lease and they should be paid.

### CONTRACT CLAIM

11. Claimant alleges that they are due from Respondent under the terms of the lease $405,255.00 plus interest. The basis of this claim is alleged to be from unpaid rent, renovation costs, unpaid utility expenses, and unpaid and disputed real estate taxes for the period September 1, 1987, through May 1, 1988.

12. During the pendency of this litigation the parties have each conducted investigations of their respective positions and have undertaken lengthy discovery proceedings including the taking of depositions and review of public records. Additionally, the parties have each, with benefit of counsel, examined applicable case and statutory law.

13. During the pendency of this litigation, all parties have incurred substantial expense and sustained inconvenience. All parties recognize that if the litigation is to continue they will incur further expense, inconvenience and disruption. Further, each party realizes that there is a substantial risk to the claims and defenses relative to their respective positions.

14. The parties believe that a fair and equitable resolution of this matter is in their best interests and in the interests of the public.

15. Although each party believes that they have, in good faith, presented valid claims and defenses, they believe that further efforts in carrying forth their respective claims and defenses are both uneconomical and uncertain.

16. The petitioners have agreed to reduce the disputed portion of their claim to $157,117, in full and complete satisfaction of their claim against the State of Illinois.

17. The parties believe that this represents a fair and equitable resolution of the dispute.

18. That in the event this court approves this sum as a fair and equitable resolution and enters an award to claimant, the parties will execute and will file all documents necessary to conclude this litigation.

Wherefore, Claimant and Respondent pray that this court enter an order granting an award to claimant as follows and dismissing this case.

A. For the liability of Respondent to Claimant for tax amounts unable to be paid due to a lapse in the applicable appropriation, the sum of $79,755.00.

B. For resolution of Claimant's claim for unpaid rent, utility expenses, renovations and real estate taxes the sum of $157,117.00.

C. That this matter be dismissed."

Prior to this settlement being tendered, the Court heard oral arguments on the Respondent's Motion for Summary Judgment and the Claimant's Cross-Motion for Summary Judgment. During the course of that proceeding, the Court inquired as to whether an attempt to settle this matter had been made. Although the Court did not urge or instigate a settlement discussion, we did indicate that we would consider any reasonable settlement. (Tr., pp. 29-34.) The settlement recited above is now before us for approval.

This Court is not bound by such agreements, but does not seek to interpose a controversy where none

appears to exist. However, based on the record before us we are constrained to not grant the parties' motion in its entirety.

In breach of contract claims whether the claims are before us on their merits or for approval of a settlement, it is this Court's policy to limit awards so as not to exceed the amount of funds, appropriated and lapsed, with which payment could have been made. To do otherwise, *i.e.* to award money for debt incurred beyond the sum allotted by the General Assembly, would be tantamount to making a deficiency appropriation. The appropriation of State funds for governmental operations is the constitutional prerogative of the General Assembly. It is this Court's duty to uphold that process and advise the General Assembly. (*Thorlief Larsen & Son, Inc. v. State* (1990), 42 Ct. Cl. 195; *Bojko v. State* (1988), 41 Ill. Ct. Cl. 202; *J.F. Inc. v. State* (1988), 41 Ill. Ct. Cl. 5; *Loewenberg/Fitch Partnership v. State* (1986), 38 Ill. Ct. Cl. 227; *Ude, Inc. v. State* (1982), 35 Ill. Ct. Cl. 384.) In the case at bar, an insufficient amount of money lapsed to cover the entire settlement.

The case at bar involves two types of damages claimed. The first element of damages claimed is described as a lapsed appropriation claim based on a property tax escalation clause in the lease. The balance of the claim relates to damages otherwise caused by the alleged breach of the lease contract.

As for the tax escalation clause, it appears to be the parties' position (see paragraphs 8, 9, and 10 of their motion) that because property tax bills are not sent out until the year after they have accrued they could not be paid due to the lapsing of the funds appropriated for such payments. As the Court indicated at the oral argument (Tr. 40), this position may not be tenable. The

contract did not obligate the Respondent to pay until the tax bill was sent out during the year after. Until the bill was sent out neither party could know what it would be. The bill could not be paid until the following year. We hold that such obligations are current obligations of the fiscal year in which they become due. This position is consistent with the practice of the Office of the State Comptroller. The Court also notes that such clauses are common in many State leases and to hold otherwise could lead to all such lessors filing claims.

The property taxes relating to 1986 were obligations of fiscal year 1987. The parties agree that $48,941.71 is due and owing. The record indicates that the Office of the Attorney General lapsed $57,959.00 that year. Of said sum, only $15,265.00 lapsed in the Contractual Services Line Item Appropriation out of which this bill could have been paid and that prior awards by this Court have used $11,497.00 of that money leaving only $3,769.00 available. No information was put into the record concerning which line item appropriations the other money lapsed in so we cannot consider possible transferability. (No fiscal information for fiscal year 1986 was put in the record so, even if relevant, we could not enter an award.)

As for the 1987 taxes payable in fiscal year 1988, the parties agreed that $30,813.36 is due and owing. The record indicates that the Office of the Attorney General lapsed on $12,785.00 in the contractual services money that year of which $1,000.00 has already been expended by previous Court of Claims action, leaving only $11,785.00 available for an award. Again, the record contains no information about potentially transferable lapsed funds.

It is axiomatic that this Court cannot make an award in a lapsed appropriation claim in excess of the amount of appropriations which lapsed and we are constrained

to approve an award in the amount of $15,554.00 on this aspect of the claim.

The balance of the case relates to damages otherwise suffered by the alleged breach of the contract: unpaid rent, renovation costs, unpaid utility expenses, and unpaid and disputed real estate taxes. For this the Claimant sought $405,255.00 and interest. The parties have agreed on payment of $157,117.00 in satisfaction of this portion of the claim.

As previously indicated, the Court is constrained to disapprove that portion of the settlement which is in excess of the appropriations lapsed. Although the Court cannot make the agreed award, the General Assembly may. For the purpose of possible consideration of this case by the General Assembly, we find that but for the insufficiency of lapsed funds we would have approved the settlement and awarded the Claimant $236,872.00. Our decision shall in no way be interpreted as a reflection of our views on the merits of either party's legal position taken prior to the settlement.

For the reasons stated hereinabove, it is hereby ordered that the Claimant be, and hereby is, awarded $15,554.00. If the General Assembly does consider this matter and acts to approve additional compensation, an additional sum of $221,318.00, as the parties agreed, is the Court's finding as to an appropriate amount.